IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Christian Mize Davis,<br><br>Plaintiff,<br><br>vs.<br><br>Regency Hospice of Georgia, LLC,<br><br>Defendant. | **Case No:** 1:26-cv-03996-MGL-PJG<br><br>**COMPLAINT**<br>**(JURY TRIAL REQUESTED)** |

**JURISDICTION AND VENUE**

1. Plaintiff is a citizen and resident of the State of South Carolina, County of Aiken and a former employee of Defendant.

2. Defendant is a for-profit corporation doing business in the State of South Carolina, County of Aiken.

3. At all times pertinent to this Complaint, Defendant conducted business in Aiken, South Carolina.

4. Defendant employs more than fifty employees in a less than seventy-five mile radius through its locations in Aiken, South Carolina and Augusta, Georgia and is engaged in an industry affecting commerce. At all times material herein, Defendant was an "employer" within the meaning of 42 U.S.C. §12111 and 42 U.S.C. §2000(e).

5. Defendant, a healthcare provider, is also an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203.

6. Plaintiff was a full-time employee of Defendant from January 2022 to December 26, 2025.

7. Plaintiff was an "eligible employee" as that term is defined in the Family Medical Leave Act (FMLA) and an "employee" within the meaning of the FLSA.

8. Throughout the entirety of her employment with Defendant, Plaintiff worked in Aiken, South Carolina.

9. Pursuant to decision, policy, and plan, Plaintiff worked hours for which she was not paid and worked more than forty (40) hours per week but was not paid overtime pay.

10. All actions pertinent to the allegations in this Complaint took place in the Aiken Division of the South Carolina District. Presently and at all times, Defendant has conducted substantial, continuous and systematic commercial activities in this District.

11. This action arises under the Family Medical Leave Act, Fair Labor Standards Act, and South Carolina common law.

12. Jurisdiction and venue are proper in this Court pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 216 (b), 28 U.S.C. § 1367, and 28 U.S.C. § 1391(b) and (c).

**FACTS**

13. Plaintiff began employment with Defendant around January 3, 2022 as a Registered Nurse.

14. Plaintiff's terms of employment stated that she would be paid a salary of $73,840 as an exempt employee and only "required deductions" would be taken from her wages.

15. Plaintiff at times worked over 40 hours per week as she often completed paperwork from home after visiting patients, worked on-call shifts on the weekends, and completed necessary work from home on sick days.

16. Plaintiff was not paid for all hours worked and was not paid overtime compensation when she worked over 40 hours in a week.

17. Defendant did not pay Plaintiff on a salary basis because Defendant made improper deductions from Plaintiff's wages.

18. In addition to violating wage payment laws, Defendant also retaliated against Plaintiff after Plaintiff took FMLA leave and reported compliance issues regarding a patient safety concern.

19. Plaintiff's performance as a nurse was excellent; Plaintiff's supervisor evaluated Plaintiff's nursing skills on December 22, 2025 and gave her a positive review.

*FMLA Leave and Retaliation*

20. While employed by Defendant, Plaintiff became eligible for FMLA leave and began FMLA leave on September 17, 2025.

21. Plaintiff's FMLA leave included approval through December 16, 2025, if needed, but Plaintiff visited her physician on December 8, 2025 and was released to return to work on December 10, 2025.

22. Plaintiff returned to work on December 10, 2025.

23. When Plaintiff returned to work from FMLA leave, her supervisors complained about her being out so long, referred to her leave as a vacation, and punished her for taking FMLA leave.

24. For example, on December 12, 2025, Plaintiff's supervisor reversed her decision about previously granted PTO for December 26, 2025 and notified Plaintiff that the PTO day was denied "due to you[r] being out for an extended time."

25. Plaintiff was also required (with very little notice) to work an on-call shift on December 12, 2025.

26. A few days later, Plaintiff had to leave work early on December 15, 2025 to pick up her son, who was very sick with the flu.

27. On this same day, Plaintiff's supervisor complained that Plaintiff had "been out almost 12 weeks."

28. Defendant's reaction to Plaintiff's FMLA leave reminded Plaintiff of Defendant's reaction to a prior FMLA leave she took for a high-risk pregnancy in 2024.

29. When Plaintiff needed intermittent FMLA leave and accommodations for a high-risk pregnancy in 2024, Plaintiff's supervisor became so angry that Plaintiff's physician became concerned about Plaintiff's health and the serious risk to Plaintiff if Plaintiff's supervisor failed to honor the leave and accommodations.

30. Plaintiff's physician ultimately required Plaintiff to start full leave (instead of intermittent) earlier than planned as a result of Defendant's hostility to the leave and needed accommodations.

31. Defendant's reaction to Plaintiff's FMLA leave was also similar to Defendant's hostility towards another employee who needed FMLA leave and shared the same supervisor as Plaintiff.

32. The supervisor was noticeably bothered by the FMLA leave needed by the other employee and often complained, "she's never here" and joked that she was "on vacation."

33. When the employee returned, it appeared as though the supervisor was retaliating against her by increasing her workload to "make up" for the time she was on FMLA leave.

34. This same employee warned Plaintiff that Plaintiff might want to look for another job instead of trying to return from FMLA leave.

35. Plaintiff could not report to work on December 16, 2025 and December 17, 2025 because Plaintiff and her son both tested positive for the flu and had fevers and other serious symptoms. The absences were supported by a doctor's note.

36. Despite not feeling 100% better, Plaintiff returned to work on December 18, 2025.

37. On December 19, 2025, Plaintiff's supervisor notified Plaintiff and other nurses that there were several "on call" needs for the upcoming few weeks; the supervisor listed multiple shifts and Plaintiff immediately volunteered to be on call on December 30, 2025 from Midnight to 8:00am to try to be helpful and responsive.

38. Plaintiff was also required (with very little notice) to work an on-call shift on December 20, 2025.

39. On December 23, 2025, Plaintiff notified her supervisor that she only had childcare through 11:30am on the following day (December 24, 2025).

40. Plaintiff's childcare options had been complicated by Defendant's retroactive denial of her previously scheduled PTO.

41. Plaintiff had previously scheduled to use PTO on December 26, 2025 because her childcare providers were planning to be out of town for the holidays.

42. Plaintiff finished all patient visits on December 24, 2025 before picking up her son and worked past her childcare provider's availability in order to finish the patient visits.

43. While still at work on December 26, 2025, Plaintiff received a call from her childcare provider who told her she needed to come pick up her son immediately because he was very sick.

44. Plaintiff contacted her supervisor, completed a patient visit, then picked up her son from the childcare provider.

45. Defendant terminated Plaintiff's employment on December 26, 2025.

46. Defendant's other nurses were regularly allowed to work flexible hours as long as patients were seen within a required time period.

47. Defendant also allowed childcare flexibility to other employees, including its Senior Patient Care Coordinator who was allowed to let her child sleep on the floor in her office.

48. During the termination phone call, Plaintiff's supervisor stated that Plaintiff was being terminated because Defendant needed a more reliable nurse.

49. Plaintiff's termination and Defendant's statement about needing a more reliable nurse occurred within a few weeks of Plaintiff's return from FMLA leave and immediately after two comments from Defendant's complaining about Plaintiff's "extended leave," which was protected FMLA leave.

*Retaliation for Patient Safety Complaint*

50. Plaintiff's termination also occurred on the same day Plaintiff reported a compliance issue to Defendant's corporate compliance department and the South Carolina Department of Health and Environmental Services and Department of Public Health.

51. On December 22, 2025, Plaintiff witnessed an emergency safety issue with a patient and called her supervisor to assist her with the emergency.

52. Plaintiff witnessed violations of patient safety and compliance regulations and was concerned that the patient had been neglected.

53. Several days later, on December 26, 2025, Plaintiff was scheduled to visit twelve patients and then her supervisor added three admissions to her schedule.

54. Plaintiff's supervisor instructed Plaintiff to take care of the new admissions before visiting patients.

55. Plaintiff objected to the prioritization of admissions over established patients in part because of the possible patient neglect issue for an established patient that had occurred four days prior, on December 22, 2025.

56. Plaintiff's supervisor did not address her concerns or objection and instead accused Plaintiff of being confrontational.

57. After her concerns were ignored, Plaintiff contacted Defendant's corporate compliance department and the South Carolina Department of Health and Environmental Services and Department of Public Health to file a complaint about the patient care issues, including prioritization concerns she witnessed on December 26, 2025 and patient safety concerns she witnessed on December 22, 2025 related to possible neglect of a vulnerable adult.

58. Upon contacting the corporate compliance department, Plaintiff was told that her complaint warranted an official investigation and would be escalated; Plaintiff was notified of her termination less than 15 minutes later.

*Wage Payment Violations*

59. Plaintiff frequently performed work for Defendant from home, even during the evenings, on weekends, and when she was on sick leave.

60. Plaintiff also worked "on call" shifts for Defendant.

61. Plaintiff worked more than 40 hours per week while employed by Defendant.

62. When Plaintiff had to miss a regularly scheduled work day, Plaintiff made up her work by working from home and visiting patients during the weekend.

63. Plaintiff was classified as an exempt employee and should have been paid on a salary basis, but Defendant made improper deductions to Plaintiff's salary without proper notice of a valid policy, plan or practice.

64. Additionally, Defendant did not pay Plaintiff for all hours worked and did not pay overtime compensation to Plaintiff for hours worked over 40 hours per week.

65. On December 19, 2025, Defendant issued a paycheck to Plaintiff for $63.00.

66. The paycheck on December 19, 2025 covered the pay period from November 30, 2025 to December 13, 2025, which included Plaintiff's FMLA leave and several days worked after her return from FMLA leave.

67. The paycheck on December 19, 2025 included an improper deduction of $806.94 for "21.1904 PTO hours."

68. On January 2, 2026, Defendant issued a paycheck to Plaintiff which also included improper salary deductions.

69. The paycheck on January 2, 2026 included a deduction of $1,401.74 for 36.81 hours of PTO.

70. Upon information and belief, Plaintiff's PTO account reflected 0.3 hours of available PTO at the time of her termination on December 26, 2025.

71. In addition to the paychecks on December 19, 2025 and January 2, 2026, Defendant made additional improper deductions from Plaintiff's salary while Plaintiff was employed.

72. In addition to the above violations, Defendant did not regularly or consistently compensate Plaintiff for on-call work.

73. Upon information and belief, Defendant's deductions may have been in retaliation for Plaintiff's FMLA leave.

74. Prior to requesting FMLA leave, Plaintiff's supervisor allowed Plaintiff to request a day off with less than two weeks' notice (which would typically not be allowed by policy), but then treated her much harsher when she returned from FMLA leave.

75. Defendant allowed its other nurses broad flexibility in scheduling patient visits and performing weekly work. Defendant requested that nurses see patients and complete documentation within the Sunday-Saturday Medicare billing cycle, but as long as patients were seen during this cycle and supervisors were informed about scheduling, Defendant typically allowed employees to rearrange patient visits for appointments or illnesses as long as the changes were communicated to supervisors.

76. As an example of the flexibility allowed, it was very common for nurses to visit patients on Saturdays or outside traditional hours (before 8:00am or after 5:00pm).

77. Employees were also allowed to work additional on-call shifts in exchange for flexibility during the week.

78. When Plaintiff returned from FMLA leave, Plaintiff was not allowed the same flexibility and was punished for taking FMLA leave.

**FIRST CAUSE OF ACTION**
**(FLSA Wage and Overtime Violations, 29 U.S.C. §§ 201 *et seq*)**

79. Plaintiff realleges and incorporates by reference the allegations contained in the forgoing paragraphs.

80. Defendant made improper deductions from Plaintiff's salary and therefore did not pay Plaintiff on a salary basis.

81. Defendant failed to pay Plaintiff for all hours worked and also failed to pay Plaintiff time worked in excess of forty (40) hours per week at time and a half rates for work, as required by the FLSA.

82. Defendant failed to keep accurate records as required by the FLSA.

83. Plaintiff is owed back wages and liquidated damages due to Defendant's violations of the Fair Labor Standards Act (FLSA).

84. Plaintiff seeks damages in the amount of her unpaid wages, unpaid overtime wages, liquidated damages, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

**SECOND CAUSE OF ACTION**
**(Violation of the South Carolina Payment of Wages Act)**

85. Plaintiff realleges and incorporates by reference the allegations contained herein.

86. Plaintiff was an employee of Defendant.

87. Defendant is a corporation employing persons in the State of South Carolina.

88. Defendant is an "employer" within the meaning of the South Carolina Payment of Wages Act.

89. Plaintiff was not fully compensated for the work she performed for Defendant pursuant to the terms of her employment.

90. Defendant failed to pay all wages due to Plaintiff and these wages are more than thirty (30) days overdue.

91. Defendant improperly and wrongfully deducted from Plaintiff's paychecks without providing notice of these deductions.

92. Defendant's actions violate Sections 41-10-30, 41-10-40, and 41-10-50 of the South Carolina Code of Laws and public policy.

93. Defendant's actions were taken in bad faith as there was no bona fide disputes as to whether Plaintiff was entitled to her wages and Defendant had no good faith reason to deduct from Plaintiff's wages without proper notice or withhold Plaintiff's wages.

94. Defendant's intentional and willful failure to comply with various provisions of the South Carolina Payment of Wages Act has caused Plaintiff to suffer actual damages and incur attorneys' fees and costs.

95. Pursuant to the South Carolina Payment of Wages Act, Plaintiff is entitled to damages in the form of the payment of owed wages, treble damages, attorneys' fees, costs, and pre and post judgment interest, all in an amount to be determined by the trier of fact.

**THIRD CAUSE OF ACTION**
**(FMLA Retaliation, 29 USC § 2615)**

96. Plaintiff realleges and incorporates by reference the allegations contained in the forgoing paragraphs.

97. Plaintiff engaged in a protected activity by taking FMLA leave from September 17, 2025 to December 9, 2025.

98. Defendant punished Plaintiff for taking FMLA leave.

99. Defendant terminated Plaintiff's employment within three weeks of Plaintiff's return from FMLA leave.

100. Defendant used Plaintiff's FMLA leave as a negative factor in its decision to terminate Plaintiff's employment.

101. Defendant terminated Plaintiff's employment because she took FMLA leave.

102. As a direct result of Defendant's actions, Plaintiff suffered damages in the form of lost back and future wages, lost benefits, and fees resulting from mortgage loan mitigation and payment plans for utilities. Plaintiff was also forced to pay out of pocket for medical appointments and was forced to delay medical needs for herself and her son.

103. Plaintiff is entitled to actual damages including lost back and future wages and benefits, liquidated damages, prejudgment and post judgment interest, equitable relief, costs and attorneys' fees.

**FOURTH CAUSE OF ACTION**
**(Wrongful Termination in Violation of Public Policy in the Alternative to FMLA Retaliation)**

104. Plaintiff realleges and incorporates by reference the allegations contained in the forgoing paragraphs.

105. It is against the public policy in this state to discharge an employee because she refuses to remain silent to violations of the law or public policy.

106. Plaintiff had an obligation to report possible neglect of a vulnerable adult and related compliance issues.

107. Plaintiff reported these issues internally and externally.

108. To attempt to intimidate Plaintiff from reporting these issues and cooperating with the related investigations, Defendant terminated Plaintiff's employment.

109. Plaintiff was wrongfully terminated as a result of her complaints about Defendant's wrongful acts.

110. Defendant's termination of Plaintiff violated the public policy of the State of South Carolina and was a violation of South Carolina's civil and criminal laws.

111. As a direct result of Defendant's actions, Plaintiff suffered damages in the form of lost back and future wages, lost benefits, and fees resulting from mortgage loan mitigation and payment plans for utilities. Plaintiff was forced to pay out of pocket for medical appointments and was forced to delay medical needs for herself and her son.

112. Plaintiff seeks actual and compensatory damages resulting from her wrongful termination.

WHEREFORE, having fully stated her Complaint against Defendant, Plaintiff demands judgment against Defendant for lost back and future wages and benefits, unpaid overtime wages, liquidated damages, treble damages, actual and compensatory damages, pre and post judgment

interest as provided by law, equitable relief, attorneys' fees and costs, and for such other relief as this Court deems just and proper.

BLOODGOOD & SANDERS, LLC

*s/Lucy C. Sanders*
Lucy C. Sanders, Federal Bar No.: 10834
242 Mathis Ferry Road, Suite 201
Mt. Pleasant, SC 29464
Telephone: (843) 972-0313
Email: lsanders@bloodgoodsanders.com
*Attorneys for Plaintiff*

Charleston, South Carolina

Date: September 10, 2026